UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 16-79 (DWF) |
| Plaintiff, | |
| v. | MEMORANDUM<br>OPINION AND ORDER |
| Peter Joseph Tuckner, | |
| Defendant. | |

Peter Joseph Tuckner, Defendant, *Pro se*.

Ana H. Voss, Craig R. Baune, and Katharine T. Buzicky, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

## INTRODUCTION

This matter is before the Court on Defendant Peter Joseph Tuckner's ("Tuckner") *pro se* motion for release to home confinement in light of the COVID-19 pandemic.[1] (Doc. No. 29 ("Motion").) The United States of America (the "Government") opposes Tuckner's Motion.[2] (Doc. No. 31.) For the reasons discussed below, the Court respectfully denies Tuckner's Motion.

---

[1] The Court construes Tuckner's Motion as a request under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), and pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Compassionate Release"). As discussed below, the Court finds that Tuckner's Motion fails under either analysis.

[2] While the Court permitted Tuckner to respond to the Government's opposition, he did not do so. (See Doc. No. 30 (granting Tuckner until July 6, 2020 to respond).)

## BACKGROUND

On April 21, 2016, Tuckner pled guilty to one count of Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). (Doc. No. 10.) On September 29, 2016, this Court sentenced him to 68 months' imprisonment followed by a ten-year term of supervised release. (Doc. Nos. 20-21.) Tuckner is now incarcerated at FMC Rochester in Minnesota. BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed July 23, 2020). According to the Bureau of Prisons ("BOP"), Tuckner's release date is August 21, 2021. *Id.*

Tuckner now moves for release in light of the COVID-19 pandemic.[3] Tuckner asserts that he considers himself "to be in fair health, with many of the common issues for a man of nearly 66 year[s]." (Motion at 1.) He states that he takes medication "to control cholesterol and anxiety," and that he is currently being monitored for vertigo. (*Id.*) Tuckner also asserts that "while [he is] prepared to spend all [68 months] in prison, [he doesn't] want to die" in prison. (*Id.* at 2.) Tuckner asks the Court to release him to the Elderly Offender Home Detention program. (*Id.* at 1.) Tuckner argues that "releasing [him] would present a lower risk of contracting the C[OVID]-19 virus than would staying confined in prison." (*Id.*)

---

Because nearly 3 weeks have passed since Tuckner's deadline to respond, the Court considers the matter fully briefed.

[3]   While Tuckner's pro se Motion appears to request relief under the CARES Act, the language he uses implies that he may have intended to seek relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (See Motion at 1.) As noted above, the Court construes his Motion under both the CARES Act and pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

## DISCUSSION

### I.  The CARES Act

The First Step Act ("FSA") was enacted into law on December 21, 2018.  *See* Pub. L. No. 115-391, 132 Stat. 5194.  As relevant here, the First Step Act revised the provisions for early release to halfway houses or home confinement that had been in place under the Second Chance Act of 2007.  *See* 18 U.S.C. § 3624(c)(1).

In its previous form, Section 3624 authorized placement of prisoners into home confinement, providing that the BOP may place a prisoner for 10 percent of the term of his or her imprisonment or six months, whichever is shorter.  18 U.S.C. § 3624(c)(2).  Now, as amended, Section 3624 additionally provides that the BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."  *Id.*; FSA § 602.  Notably, the FSA did not change 18 U.S.C. § 3624(c)(4), which states that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621," which in turn provides that the BOP "shall designate the place of the prisoner's imprisonment."  18 U.S.C. §§ 3624(c)(4), 3621(b).

On April 3, 2020, Attorney General William Barr exercised emergency authority under Section 12003(b)(2) of the CARES Act to expand the group of inmates who may be considered for home confinement in light of emergency conditions caused by the COVID-19 virus and its effect on prison populations.  The BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, starting with the inmates incarcerated at facilities that

3

have experienced COVID-19 cases (FCI Oakdale, FCI Danbury, FCI Elkton) and similarly-situated facilities to determine which inmates are suitable candidates for home confinement. BOP Update on COVID-19 & Home Confinement, www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (Last accessed May 12, 2020).

As noted above, the BOP has exclusive authority to determine the placement of prisoners. *See* 18 U.S.C. § 3624(c)(2). Neither the CARES Act nor the FSA alters this authority. *See United States v. James*, Cr. No.15-255 (SRN), 2020 WL 1922568 at *2 (D. Minn. Apr 21, 2020); *United States v. Kluge*, Cr. No. 17-61 (DWF), 2020 WL 209287 at *4 (D. Minn. Jan 14, 2020); *United States v. Roy*, Cr. No. 15-303 (MJD), 2019 WL 6910069, at *1 (D. Minn. Dec. 19, 2019); *Ward v. Bureau of Prisons*, Civ. No. 3:19-770-D-BN, 2019 WL 1930025, at *2 (N.D. Tex. Apr. 2, 2019), *report and recommendation adopted*, Civ. No. 3:19-0770-D, 2019 WL 1924903 (N.D. Tex. Apr. 30, 2019); *see also Xiao v. La Tuna Fed. Corr. Inst*., Civ. No. EP-19-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement.").

Moreover, Courts have consistently held that placement questions are not reviewable. *See*, *e.g*., 18 U.S.C. § 3621(b); *United States v. Shields*, Cr. No. 12-00410-BLF-1, 2019 WL 2359231, at *5 (N.D. Cal. June 4, 2019) ("The authority to determine [defendant's] placement for the remainder of his sentence is vested solely within the discretion of the BOP."); *United States v. Parish*, Cr. No. 14-166, 2016 WL 7441142, at

4

*1 (E.D. La. Dec. 27, 2016); *Deffenbaugh v. Sullivan*, Cr. No. 5:19-HC-2049-FL, 2019 WL 1779573, at *2 (E.D.N.C. Apr. 23, 2019); *Ward*, 2019 WL 1930025 at *3 (extensive discussion); *Rizzolo v. Puentes*, Civ. No. 119-00290SKOHC, 2019 WL 1229772, at *3 (E.D. Cal. Mar. 15, 2019); *United States v. Perez-Asencio*, Cr. No. 18-3611-H, 2019 WL 626175, at *4 (S.D. Cal. Feb. 14, 2019); *United States v. Burkhart*, Cr. No. 6:03-036-DCR, 2019 WL 615354, at *2 (E.D. Ky. Feb. 13, 2019); *Parsons v. Howard*, Civ. No. 3:18-1406, 2019 WL 469913, at *4 (M.D. Pa. Feb. 6, 2019); *Burg v. Nicklin*, Civ. No. EP-19-24-FM, 2019 WL 369153, at *3-4 (W.D. Tex. Jan. 29, 2019).  Furthermore, "[i]t is well established that prisoners do not have a constitutional right to placement in a particular prison facility or place of confinement."  *James*, 2020 WL 1922568 at *5 (citing *Khdeer v. Paul*, Civ. No. 18-2112 (ECT/BRT), 2018 WL 6919637, at *5 (D. Minn. Nov. 29, 2018)).

In short, because release to the Elderly Offender Home Detention program or home confinement is a placement decision, the Court finds that it is solely within the BOP's discretion to dictate.  *See* 18 U.S.C. § 3624(c).  Accordingly, to the extent Tuckner seeks release to the Elderly Offender Home Detention program or home confinement, the Court respectfully denies his Motion because it lacks the authority to consider his request.

**II.    Compassionate Release**

Under 18 U.S.C. § 3582(c)(1)(A)(i), a Court may reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by

5

the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement addressing reduction of sentences under § 3582(c)(1)(A) asserts in relevant part that a court may reduce a defendant's term of imprisonment after considering § 3553(a) factors if it finds that: (1) "extraordinary and compelling reasons warrant the reduction;" (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (3) "the reduction is consistent with this policy statement."[4]  USSG § 1B1.13 ("Statement"). The Statement includes an application note that defines "extraordinary and compelling reasons" as (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories.[5]  *Id.*

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a

---

[4]   While the policy statement refers only to motions filed by the BOP Director, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" to mean that the Statement also applies to motions filed by defendants.

[5]   The Statement cites examples of qualifying medical conditions including metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia. (Statement.)

6

defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[6] *Id.*

Here, the record does not reflect that Tuckner has exhausted his administrative remedies. Accordingly, the Court must deny his Motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) because it lacks authority to consider his request. *See, e.g.*, *United States v. Kluge*, Cr. No. 17-61, 2020 WL 209287 at *4 (D. Minn. Jan. 14, 2020); *United States v. Roy*, Cr. No. 15-303, 2019 WL 6190069 at *1 (D. Minn. Dec. 19, 2019); *United States v. Gutierrez*, Cr. No. 01-331, 2019 WL 8219448 at *3 (D. Minn. Nov. 6, 2019).

Even if the Court had the authority to consider Tuckner's Motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court finds that it also fails on the merits because Tuckner does not present an extraordinary and compelling reason to warrant release. Currently, FMC Rochester has no reported cases of the COVID-19 virus. BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last accessed July 23, 2020). Moreover, there is no indication that FMC Rochester will be unable to handle an outbreak or accommodate Tuckner's specific concerns.[7] While the Court understands the

---

[6] While judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A). See Ross v. Blake, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

[7] Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued

gravity of the COVID-19 pandemic and is mindful of Tuckner's concerns, the Court finds that the circumstances do not present an extraordinary and compelling reason to warrant release. Accordingly, the Court respectfully denies Tuckner's Motion.

## CONCLUSION

For the reasons set forth above, the Court finds that it lacks authority to consider Tuckner's Motion under the CARES Act because the decision of where to place a defendant is solely within the BOP's discretion to dictate. The Court also finds that Tuckner is ineligible for Compassionate Release because he fails to satisfy the mandatory exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A) and because he does not present an extraordinary and compelling reason to warrant release.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Peter Joseph Tuckner's *pro se* Motion for Release (Doc. No. [29]) is respectfully **DENIED**.

Date:  July 24, 2020             s/Donovan W. Frank
                                                     DONOVAN W. FRANK
                                                     United States District Judge

---

effective operation of the federal prison system." See Federal Bureau of Prisons, BOP COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp (last accesses July 23, 2020). Those steps include limiting visits and internal movement, increased hygiene measures, and screening of both staff and inmates. (Id.) Current measures also include a 14-day isolation period, and limited group gatherings. See Federal Bureau of Prisons, BOP COVID-19 Action Plan Phase V, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last accessed July 23, 2020).